THE TOSCANO LAW FIRM, LLC
80 Bloomfield Ave.
Suite 101
Caldwell, NJ  07006
Phone: 973-226-1691
Facsimile:  973-226-1693
E-Mail:  ptoscano@pptlawfirm.com

Attorney for Plaintiffs

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER CRISAFULLI and<br>COREY FLOYD,<br><br>        Plaintiffs,<br>v.<br><br>TOWNSHIP OF BRANCHBURG,<br>SOMERSET COUNTY PROSECUTOR'S<br>OFFICE, KATE PROSCIA-BERGER,<br>and DAVID YOUNG,<br><br>        Defendants. | **COMPLAINT AND JURY DEMAND** |

## THE PARTIES

1. Plaintiff, Peter Crisafulli, at all relevant times mentioned herein, was a Police Lieutenant with the Branchburg, New Jersey Police Department (hereinafter referred to as "plaintiff" or Crisafulli). He was an exceptional, outstanding, first rate law enforcement officer in his own right. His professional reputation among law enforcement was essentially unimpeachable, and his work record was fundamentally unblemished. He stayed to himself, bothered no one on the job and was only concerned with being the finest law enforcement officer he could be. He was the recipient of numerous/countless awards over the span of his career, up to the time he was forced/required to retire/was constructively

discharged on May 1, 2019 by the defendant Township of Branchburg, with and at the insistence of defendant Somerset County Prosecutors Office as will be further explained below.

2. Plaintiff, Corey Floyd, at all relevant times mentioned herein, was a Sergeant with the Branchburg, New Jersey Police Department (hereinafter referred to as "plaintiff" or Floyd). He was also an exceptional, first rate law enforcement officer in his own right. His professional reputation among law enforcement was essentially irreproachable and unassailable, and his work record was profoundly untarnished. Like plaintiff Crisafulli, he also stayed to himself, bothered no one on the job and was only concerned with being the best law enforcement officer he could be. He is soft spoken, kind to all and benevolent, yet nevertheless was illegally forced/required to retire/was constructively discharged on June 1, 2020, by defendant Township of Branchburg, with and at the insistence of defendant Somerset County Prosecutors Office as will be explained below.

3. Defendant, Township of Branchburg (hereinafter sometimes referred to as "Township" or "TOB"), is a municipal corporation of the State of New Jersey, located in Somerset County. It is governed under the mayor-council-administrator form of government, controlling the day-to-day operations of the Branchburg Police Department (hereinafter sometimes referred to as "BPD"). Historically, defendant TOB has allowed both the promotional process and the internal affairs investigation process within the BPD to exist as rife with inconsistencies, illegalities, preferential treatment, irregularities, abnormalities, manipulation, wrongdoings, exceedingly serious New Jersey State Attorney General Guideline internal affairs mandate violations and misdeeds and, further, defendant TOB has acted at all relevant times mentioned herein with ***deliberate indifference*** to all promotional issues and internal affairs vengeful motives/issues there in

2

the BPD regarding both plaintiffs herein. Additionally, defendant TOB has allowed (and indeed fostered, promoted, adopted, ratified, and directly and/or indirectly approved) the within recited misgivings and unlawful actions of the BPD's former Chief of Police, defendant David Young, to exist without any attempt whatsoever to curb, stop, prohibit, disallow or forbid same.

4. Defendant, Somerset County Prosecutors Office (hereinafter sometimes referred to as the "SCPO") is the chief law enforcement agency in the county of Somerset, New Jersey which all municipal police departments in that county ultimately report to. Pursuant to NJSA 40A:14-181, defendant SCPO is also mandated to specifically and without question/reservation/equivocation obey, follow, observe, conform and adhere to all of the procedural aspects specifically laid out in the New Jersey State Attorney General Guidelines, Internal Affairs Policies and Procedures (hereinafter sometimes referred to as the NJSAGG, IAPP's) when it is involved as the investigating entity regarding administrative and/or criminal complaints made as against any county law enforcement officer. That said, at all relevant times mentioned herein, the SCPO and certain of its agents also acted with ***deliberate indifference*** and, at times, with downright malevolent motives in terms of insidious and underhanded violations of the federal civil rights of both plaintiff Crisafulli and Floyd as is explained below, while illegally, unlawfully and illegitimately threatening to criminally charge both of them, inter alia, unless they both retired from the BPD.

5. Defendant Kate Proscia-Berger (hereinafter sometimes referred to as "KPB") is/was at all times a police officer with the TOB police department. At all relevant times mentioned herein, KPB's husband was in point of fact employed by defendant SCPO as a

3

detective/investigator, as well as being assigned during a period of time to the SCPO's internal affairs division.

6. Defendant David Young (hereinafter sometimes referred to as "Young") is the former Chief of Police of the BPD who, at all relevant times mentioned herein, also acted with ***deliberate indifference*** and malicious intent toward both plaintiff Crisafulli and Floyd, as will be further laid out at length herein below.

## JURISDICTION OF THIS UNITED STATES DISTRICT COURT

7. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. Secs. 1331, 1343 (3) and (4), 42 U.S.C. Secs. 1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## RELEVANT FACTUAL AVERMENTS

8. Plaintiff Crisafulli and Floyd's nightmare/debacle/fiasco which forms the gravamen and fulcrum of this federal civil rights action began in/around July, 2018 and has continued uninterrupted/incessantly up to and including the date of the filing of the within Complaint.

9. And so the story commences. In July, 2018, defendant David Young, the former Chief of Police of defendant BPD announced, in writing, that he would be advancing the promotion of Crisafulli to the rank of Captain. At that same time, plaintiff Floyd was taking part in the promotional process to be promoted from Sergeant to the rank of Lieutenant. At all times during Young's tenure, his advancing an officer's name for promotion was tantamount to said officer promptly being promoted to the next rank – in

essence, Young's advancing of an individual officer's name for promotion was both sacrosanct and a "fait accompli".

10. At that same time, various other testing formats for certain promotions within the BPD were ongoing/occurring. Defendant Proscia-Berger was seeking a promotion to the rank of Sergeant, and both plaintiffs herein, as superior officers, were assigned (along with others) to evaluate her performance toward that end.

11. Needless to say, Proscia-Berger's overall job performance was such that she unquestionably did not deserve, merit or warrant to be/being promoted to the rank of Sergeant within the BPD, and she was not. Around this time, she was heard to impudently say to plaintiff Floyd and others that if she was not promoted to the rank of Sergeant, she would "blow the doors off of the BPD". Floyd was flabbergasted, never forgetting that threat/promise she so outwardly, emphatically and resoundingly pronounced.

12. Around the time after Proscia-Berger made the above declaration, she at once caused to register an internal affairs allegation/complaint with defendant Young claiming sexual harassment some twelve (12) years prior thereto at the hands of Crisafulli, and at that time also claimed sexual harassment at other times by Floyd, knowing full well that her allegations as against both plaintiff Crisafulli and Floyd were fallacious, fabricated, fictitious, contrived, manufactured, untrue, fictional, malicious and/or preposterous. But she did not care.

13. At or about that same time, defendant Proscia-Berger was also aware that both plaintiffs were seeking to be promoted to their respective next ranks. Floyd was clearly the favorite to be promoted to the rank of Lieutenant, and defendant Proscia-Berger knew this. In

5

fact, defendant Proscia-Berger herself ranked Floyd as the highest of all Lieutenant candidates.

14. At/about that time, there was also a discussion between defendant Young and Crisafulli (with confirmation from the TOB committee to follow) that both established and confirmed that Floyd would be promoted to the rank of Lieutenant.

15. Shockingly, both Crisafulli and Floyd were then advised by defendant Young, in writing, that he was placing all promotions "on hold", which made no pragmatic, resonable or logical sense whatsoever, as neither Crisafulli nor Floyd were guilty of doing anything at all untoward against defendant Proscia-Berger, at any time, during their long and storied careers with the BPD.

16. As Chief, and pursuant to the patent regulations contained in the NJSAGG, IAPP's, defendant Young could and should have simply opened up/authorized a confidential internal affairs investigation regarding these silly allegations, assigned same to the BPD internal affairs division and rapidly conduct a thorough and complete investigation, which investigation would have assuredly promptly cleared/exonerated both plaintiffs and allowed them to be promoted.

17. Instead of doing that, defendant Young, for reasons only he knows and one can only speculate about, referred the whole matter to defendant SCPO (explained further below), even though he was aware that defendant Proscia-Berger's husband held an influential investigatory law enforcement position at the SCPO (also expounded upon further below). That potential conflict/appearance of impropriety could not have been more unmistakable.

18. The plaintiffs' combined nightmarish situation at the BPD then became all the more incredible and inconceivable.

6

19. On August 7, 2018, Young, with ***deliberate indifference***, then had the unmitigated hubris to author and circulate to the entire BPD an e-mail revealing the fact that a confidential internal affairs investigation was authorized/being initiated by him as against Crisafulli and Floyd, in direct/terrible violation of the NJSAGG, IAPP's critical/crucial mandates that make it abundantly clear that all aspects of any internal affairs investigation of any target officer is, at all times, strictly confidential, and dissemination to anyone other than the targets of any investigation, the alleged victim and internal affairs personnel is strictly prohibited/forbidden/banned.

20. Why Young did this, to this day, remains mind-boggling, absurd, illegal and downright bizarre. He then sent the matter to defendant, SCPO, for what he termed was both an administrative ***and criminal*** investigation.

21. And albeit the NJSAGG, IAPP's mandate that the target of any internal affairs be promptly advised, in writing, that he/she is the target of an internal affairs investigation (an Internal Affairs Complaint Notification Form – IACNF), neither plaintiff ever received same from the TOB, defendant Young or defendant SCPO.

22. Further, albeit the NJSAGG, IAPP's also mandate that any officer who is being charged with an administrative infraction receive, in writing, a Preliminary Notice of Disciplinary Action (PNDA), neither plaintiff ever received same from the TOB, defendant Young or defendant SCPO.

23. As stated above, because of what defendant Young ostensibly (and unilaterally/wrongfully) deemed to be a potential conflict of interest with the BPD internal affairs division handling the investigation of both of the plaintiffs, he then requested that the internal affairs investigation be handled by defendant SCPO.

24. And, as previously stated, defendant Young requested the intervention of the SCPO because he additionally believed that the bogus, spurious and specious claims made by defendant Proscia-Berger also may have been ***criminal*** in nature.

25. Such a preposterous assumption/conjecture by defendant Young was, simply put, laughable and inane, especially in light of the widely held view/belief/consensus at the BPD that defendant Proscia-Berger had the reputation of being a habitual prevaricator.

26. Again, as previously laid out above, the transfer of the internal affairs investigation of Crisafulli and Floyd to defendant SCPO was even more unfathomable and perplexing because the husband of defendant Proscia-Berger was (and currently remains) an investigator/detective in the SCPO and, at certain times, was himself assigned to the SCPO internal affairs division.

27. This entire internal affairs matter thereafter became a complete "chaos grenade", as solely and exclusively launched by all of the defendants named herein – the manner in which the whole investigation was conducted was deplorable, disgraceful, shameful, reprehensible, dreadful and consistently antithetical to manifold procedural mandates of the NJSAGG, IAPP's.

28. Once the matter was referred to defendant SCPO, on October 19, 2018 the plaintiffs' then legal counsel advised certain representatives of the SCPO that a clear and blatant conflict existed in the SCPO being involved in the matter, as defendant Proscia-Berger's husband was a valued/influential employee of the SCPO and was indeed, at certain times, actually assigned to the SCPO's internal affairs division.

29. The request by that attorney for both the SCPO's recusal and a referral of the internal affairs matter to the New Jersey State Attorney General's Office by defendant SCPO was

effectively ignored in an obvious attempt by defendant SCPO to clandestinely protect both defendant Proscia-Berger and her husband at all costs.

30. As was easily predicted by both plaintiffs herein, once defendant SCPO took over the matter, both defendant Proscia-Berger and her husband punctually began to tamper with certain witnesses involved in the transferred matter, yet defendant SCPO did nothing to rectify that rank/austere injustice and apparent criminal conduct by both defendant Proscia-Berger and her husband.

31. The fiasco became worse, and the insane saga continued.

32. Once the internal affairs/criminal investigation was undertaken by defendant SCPO, the plaintiffs were ordered/directed to come into the SCPO and provide statements to a certain SCPO internal affairs investigator, thereby violating their federal constitutional right against unreasonable search and/or seizures of their persons, papers and effects.

33. At that same time, plaintiff Floyd was straight out assured/told that the investigation was not criminal at all, and it was only administrative – Floyd was advised by this orally from a representative of defendant SCPO, and that guarantee was thereafter transcribed in writing.

34. Floyd eventually would in true substance ascertain that the written assurance by defendant SCPO that their investigation of he and Crisafulli ***was not criminal*** in nature (and only administrative) was a deliberate untruth.

35. Both Floyd and Crisafulli were then at their proverbial wits end, as defendant Young prior thereto said he had to transfer the matter to defendant SCPO because of potential ***criminal conduct*** by both Crisafulli and Floyd. The whole matter was, for want of a better phrase, a circus act.

36. Defendant SCPO then "conducted" their "investigation", which investigation was a sham, bogus and rife with a pre-determined decision/finding.

37. Defendant SCPO, in a grossly negligent/***deliberately indifferent*** manner, did not interview anywhere near all of the potential witnesses in the matter, many of whom would have completely exonerated/cleared both plaintiffs of any alleged wrongdoing as alleged by defendant Proscia-Berger.

38. In fact, the entire "investigation" was conducted by the SCPO with ***deliberate indifference*** to the federal civil rights of both Crisafulli and Floyd.

39. Moreover, defendant SCPO never looked into the apparent witness tampering claims validly made by the plaintiffs as against defendant Proscia-Berger and her husband, even though both of them contacted witnesses before those witnesses came in to the SCPO to give/make their statements.

40. The saga intensified in breadth, scope and depth, further humiliating, unraveling and destroying the stellar careers of Crisafulli and Floyd.

41. Upon apparent completion of defendant SCPO's specious "investigation" of the plaintiffs, both Crisafulli and Floyd were presented with the proverbial "Hobson's Choice" – they were told that if they both agreed to plead to "something" administrative in nature and further agreed to retire from the BPD, defendant SCPO would not "pursue any other potential disciplinary ***or criminal charges***" against them.

42. Again, at no time in their law enforcement careers did either Crisafulli or Floyd do anything of a criminal nature to defendant Proscia-Berger or anyone else.

43. Once again, there was an obvious flip-flop by defendant SCPO, in that now defendant SCPO was telling both plaintiffs (after assuring in writing this was not the case) that only if they retired would no additional administrative or ***criminal charges*** be sought as


against them. The constant on and off criminal charging threats by defendant SCPO were illegal, improper, unwarranted and/or violative of the NJSAGG, IAPP's, and defendant SCPO knew that full well.

44. Needless to say, Crisafulli and Floyd were outraged, irate and livid with this newest "about face" and terribly misleading path that was laid out and pre-planned all along by defendant SCPO. But they had no choice at that time but to capitulate to this evil, immoral and wicked SCPO demand.

45. Additionally, Crisafulli was also separately threatened with a criminal charge of false swearing by defendant SCPO unless he retired.

46. Crisafulli was illegally forced out/constructively discharged by both defendants TOB and/or the SCPO on May 1, 2019 and Floyd was forced out/constructively discharged by the TOB and/or the SCPO on June 1, 2020.

47. Parenthetically, during the course of this unhinged and deranged TOB and SCPO "investigation", Crisafulli underwent not one (1) but two (2) polygraph examinations, both of which reflected no signs of deception regarding all of his past dealings with defendant Proscia-Berger and both of which all defendants herein ignored.

48. And just when one would rationally believe that this derisory, pathetic and pitiful tragedy suffered by Crisafulli and Floyd could not possibly get any worse, it did.

49. Defendant Proscia-Berger thereafter also filed a defamatory, condemnatory and slanderous lawsuit naming, among others as defendants, the TOB, Crisafulli and Floyd. By so doing, as can be readily seen by any kindergarten toddler, Proscia-Berger made good on her threat to Floyd to "blow up" the entire BPD if she was not promoted.

50. And as any sage soothsayer could have with great ease predicted, the TOB then settled that civil case, without any input whatsoever from either Crisafulli or Floyd, albeit said

11

lawsuit was laden with mistruths, lies and mendacities as against Crisafulli and Floyd. That settlement, upon information and belief, is pending as of the time the within Complaint is being filed.

51. Upon information and belief, the TOB paid Proscia-Berger an undeserved, unwarranted and utterly unjustified amount of money in doing so.

52. And once it was agreed that she would be paid, Proscia-Berger then curiously/peculiarly dismissed, with prejudice, all of her claims against Crisafulli and Floyd. Her true intentions and avaricious, rapacious and materialistic goal then became more evident, palpable and apparent than ever.

53. And the seemingly never ending narrative gets even worse.

54. Sometime after defendant SCPO assumed control of the BPD and after the plaintiffs were illegally forced to retire, the SCPO incredulously and suspiciously promoted defendant Proscia-Berger to the rank of Sergeant within the BPD. This, despite her unabashed admission to defendant SCPO that she had sexual relations while on duty at the BPD on multiple occasions.

55. Parenthetically, it was also eventually ascertained that defendant Young purposely/ intentionally shredded/spoliated/destroyed/furtively demolished all written notes/reviews of all candidates who were in the running to be promoted to the rank of Lieutenant, a blatantly illegal act that also bordered on the cusp of a criminal Official Misconduct charge. To this day, only defendant Young knows why he committed such a foolhardy and egregious act of spoliation.

56. As a result of the exhaustive and above recited hellacious set of events, both Crisafulli and Floyd's federal civil rights were egregiously violated by all of the herein named defendants, in that their rights contained in the NJSAGG, IAPP's were abrogated, and

their rights to privacy, right to be secure in their persons, papers and effects against unreasonable searches and seizures, rights not to be deprived of liberty or property without due process of law and/or not to be deprived by any state of liberty or property without due process/equal protection of law were violated/demolished /abridged/curtailed/despoiled/disrupted/destroyed by all defendants herein named.

## SPECIFIC CAUSES OF ACTION

## COUNT ONE

### (42 USC 1983)

57. The Plaintiffs incorporate Paragraphs 1 through 56 as if fully recited herein.

58. In unambiguous and unmitigated violation of 42 U.S.C. 1983, all defendants, while acting under color of law, and with purposeful, malicious and ***deliberate indifference***, violated Crisafulli and Floyd's Fourth, Fifth and Fourteenth Amendment rights under the United States Constitution and egregiously deprived the plaintiffs of their right to enjoy all of these sacred and sacrosanct Constitutional protections.

59. Additionally, all of the defendants took myriad/manifold illegal actions toward the plaintiffs in the material terms and conditions of their employment by purposely and maliciously violating N.J.S.A. 40A: 14-147, as well as deliberately violating their procedural and substantive United States Constitutional due process rights.

60. Moreover, all of the defendants took untold illegal actions toward the plaintiffs in the material terms and conditions of their employment by purposely and maliciously violating, ***with deliberate indifference***, their equal protection rights under the United States Constitution.

61. Furthermore, defendants Young, SCPO and/or TOB, in direct violation of the NJSAGG, IAPP's:

    a. initially lied to the plaintiffs about their internal affairs investigation not being criminal in nature;

    b. never properly notified either plaintiff in writing that they were the subject of an internal affairs investigation;

    c. never properly notified either plaintiff in writing that they were charged with a violation that would then be investigated;

    d. never conducted a thorough and objective investigation of either plaintiff;

    e. did not interview all witnesses to the alleged incidents in question;

    f. did not professionally, objectively and expeditiously investigate the matter; and

    g. provided to both plaintiffs incorrect/wrongful Garrity and/or Miranda warnings.

## COUNT TWO

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AS TO DEFENDANT PROSCIA-BERGER ONLY)

62. Plaintiff repeats the allegations set forth in all preceding paragraphs.

63. As described above, in committing the acts and omissions to act complained of, defendant Proscia-Berger acted intentionally and purposefully to cause the plaintiffs emotional distress and injury, and/or acted in reckless disregard for a high degree of probability that emotional distress would follow from her deceitful conduct/slander/libel of the both of them.

64. Defendant Proscia-Berger's continuous and relentless conduct was extreme and outrageous and was so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

65. As the direct and proximate cause of Proscia-Berger's extreme and outrageous intentional and/or reckless conduct, the plaintiffs suffered genuine and substantial emotional distress and injury.

66. Defendant Proscia-Berger's conduct was so severe and extreme as to cause genuine and substantial emotional distress or mental harm to the average person similarly situated to the plaintiffs, and both plaintiffs suffered such severe and substantial emotional distress and mental injury that no reasonable person would be expected to endure.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiffs Crisafulli and Floyd pray that this honorable Court:

(a)  accept jurisdiction over this matter;

(b)  empanel a jury to hear and decide this matter;

(c)  award against all defendants compensatory and punitive damages in a manner determined by the jury, as well as issuing a direct Order and/or legal finding as to the defendants to cease and desist from engaging in any further malicious, instigating, illegal and/or improper manner toward the plaintiffs as a result of their exercising their constitutionally protected federal rights in filing this action;

(d)  retroactive promotion of the plaintiffs to the respective ranks of Captain and Lieutenant, along with all back-pay and concomitant pension emoluments;

(e)  award to the plaintiffs the reasonable attorneys' fees, interest and costs of this litigation; and

(f)     for such/any other relief that this Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38, the plaintiffs herein demand a trial by jury on all counts.

Dated: March 18, 2021            By: _s/ Patrick P. Toscano, Jr._
                                                      Patrick P. Toscano, Jr. (9415)