<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PETE CRISAFULLI,** *et al.*, <br><br>　　　　　　　Plaintiffs, <br><br>　　v. <br><br> **TOWNSHIP OF BRANCHBURG,** *et al.*, <br><br>　　　　　　　Defendants. | Civil Action No. 21-5709 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon three Motions to Dismiss filed separately by Township of Branchburg ("Branchburg"), Somerset County Prosecutor's Office ("SCPO"), and Kate Proscia-Berger ("Proscia-Berger") (collectively "Defendants"). (ECF Nos. 18, 19, and 25.) Branchburg filed a Brief in Support of its Motion ("Branchburg's Moving Br.," ECF No. 18-1), Proscia-Berger filed a Brief in Support of her Motion ("Proscia-Berger's Moving Br.," ECF No. 19-3), and SCPO filed a Brief in Support of its Motion ("SCPO's Moving Br.," ECF No. 25.) Plaintiff Peter Crisafulli ("Crisafulli") and Plaintiff Corey Floyd ("Floyd," collectively "Plaintiffs") opposed the Motions. (Opp'n Br., ECF No. 31). Each Defendant replied. ("Branchburg's Reply," ECF No. 32); ("Proscia-Berger's Reply," ECF No. 33); and ("SCPO's Reply," ECF No. 34.) The Court has considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motions.

1

I.   **BACKGROUND**

   A.   **The Parties**

Crisafulli was a Police Lieutenant with the Branchburg Police Department ("Branchburg PD") (Compl. ¶ 1.)  Floyd was a Sergeant.  (*Id.* ¶ 2.)  Proscia-Berger is or was a police officer within the Branchburg PD.  (*Id.* ¶ 5.)

   B.   **History**

In the context of the pending motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

In or around July 2018, it was announced that Crisafulli and Floyd would be advanced for promotion to the rank of Captain and Lieutenant, respectively.  (*Id.* ¶¶ 8–9.)  Historically, such announcements made a promotion a near certainty.  (*Id.* ¶ 9.)  At the same time, Proscia-Berger was also seeking a promotion to the rank of Sergeant.  (*Id.* ¶ 10.)  Plaintiffs, as superior officers, were among those assigned to evaluate her performance.  (*Id.*)  They concluded that she did not deserve the promotion.  (*Id.* ¶¶ 10–11.)  During this period, she told Floyd and others that if she did not receive the promotion, she would "blow the doors off of the BPD."  (*Id.* ¶ 11.)  Shortly after Proscia-Berger's statement, she filed an internal affairs complaint claiming sexual harassment by Crisafulli approximately twelve years prior and by Floyd at other times.  (*Id.* ¶ 12.)  Plaintiffs say the complaint was entirely false and that a confidential investigation should have been conducted by the internal affairs division of Branchburg PD.  Instead, the matter was referred for an administrative and criminal investigation to Defendant SCPO—where Proscia-Berger's husband was assigned to the SCPO internal affairs division.  (*Id.* ¶¶ 16–17, 20, 26.)  Plaintiffs raised the potential conflict caused by Proscia-Berger's husband and requested that the matter be referred to the New Jersey Attorney General's Office, but their requests were ignored.  (*Id.* ¶ 29.)

The investigation was a sham and violated Plaintiffs' federal civil rights in the process. (*Id.* ¶¶ 36,38.) When it concluded, the SCPO gave Plaintiffs a choice to either plead to an administrative charge and retire or face potential disciplinary or criminal charges. (*Id.* ¶ 41.) Despite having passed two polygraph examinations, Crisafulli was threatened with a criminal charge of false swearing unless he agreed to retire. (*Id.* ¶¶ 45,47.) Plaintiffs believed they had no choice at that time but to follow the SCPO's demand. (*Id.* ¶ 44.) Crisafulli and Floyd were constructively discharged in May 2019 and June 2020, respectively. (*Id.* ¶ 46.)

Proscia-Berger then filed a civil suit against, among others, Branchburg Township, Branchburg PD, Crisafulli, and Floyd (the "Proscia-Berger Action"). (*Id.* ¶ 49.) Branchburg settled the case without any input from Plaintiffs. (*Id.* ¶ 50.) As part of the settlement, Berger dismissed her suit with prejudice against all parties, including Plaintiffs. (*Id.* ¶ 52.)

Plaintiffs now bring this suit against Branchburg Township, the SCPO, and Proscia-Berger.[1] They allege that all of the Defendants violated § 1983 by infringing their Constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. (Compl. ¶ 58.) They also allege that Proscia-Berger intentionally inflicted emotional distress. (*Id*. ¶ 63.) Plaintiffs seek monetary damages as well as injunctive relief.

II.  **LEGAL STANDARD**

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must " 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must

---

[1] The Complaint also originally named Branchburg's former Chief of Police David Young, but he has since been dismissed from the case by stipulation of the parties. (ECF No. 24.)

"review[ ] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

### A. Jurisdiction

The Court has subject matter jurisdiction over Plaintiffs' § 1983 claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over their claim for intentional infliction of emotional distress pursuant to 28 U.S.C. § 1367.

### B. Entire Controversy Doctrine

State law determines whether a claim filed in federal court is precluded by a prior state court decision. *Parkview Assoc. P'ship. v. City of Lebanon*, 225 F.3d 321, 329 (3d. Cir. 2000). New Jersey's entire controversy doctrine is its "specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods. Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d. Cir. 1997). The doctrine provides that, with only limited exceptions, "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." N.J. Ct. R. 4:30A; *see Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015). A party therefore "cannot withhold part

4

of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citation omitted). This also applies to counterclaims. *See Kaul v. Christi*, 372 F. Supp. 3d 206, 238 (D.N.J. 2019); *Marigold Mgmt, Inc. v. Arumugam*, App. Nos. 5849-17T3, 0434-18T3, 2020 WL 5033394, at *11 (App. Div. Aug. 26, 2020).

When considering whether to bar a claim under the entire controversy doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *Wadeer*, 220 N.J. at 605 (citation omitted); *see also Nype v. Spitz*, Civ. No. 20-13680, 2022 WL 329321, at *3 (D.N.J. Feb. 3, 2022). The doctrine only applies "when a prior action based on the same transactional facts has been tried to judgment or settled." *U.S. ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 352 (3d Cir. 2019) (citation omitted). Finally, the claimant must have had a "a fair and reasonable opportunity to have fully litigated the claim in the original action." *Wadeer*, 220 N.J. at 606. The doctrine therefore "does not apply to unknown or unaccrued claims." *Id*.

A motion to dismiss premised on the entire controversy doctrine is properly considered under Rule 12(b)(6) when it is apparent on the face of the complaint. *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 547 (D.N.J. 2017) (citations omitted). The Court addresses below each of the considerations relevant to the application of the doctrine.

### 1. *Related Facts or Same Transaction(s)*

Branchburg and Proscia-Berger[2] argue—and Plaintiffs do not dispute—that the current suit and the Proscia-Berger Action stem from the same core set of facts, *i.e.*, Proscia-Berger's

---

[2] The SCPO does not seek dismissal based on the entire controversy doctrine, presumably because it was not a party in the Proscia-Berger Action.

5

allegations of sexual harassment and assault, and the investigation thereof. (Branchburg Moving Br. at 9; Proscia-Berger Moving Br. at 4,6; Opp'n. Br. at 19–24). Having reviewed and compared the pleadings for the two matters, the Court agrees that they involve the same core facts such that the first element of the entire controversy doctrine is readily satisfied. (*See* Amended Complaint and Defendants' Answers from *Kate Proscia-Berger v. Township of Branchburg*, Docket No. SOM-L-1049019, attached as Exhibits A and C to the Certification of Elizabeth F. Lorell, Esq., ECF Nos. 18-3, 18-5.)

### 2. *Tried to Judgment or Settled*

In their opposition to the Motion, Plaintiffs are the first to raise the issue of the finality of the judgment of the Proscia-Berger Action. They argue that because they never reviewed or approved the settlement in that case, there was no final judgment on the merits against their claims and the entire controversy doctrine therefore cannot bar them now.[3] (Opp'n Br. at 22.)

The record reflects that on March 12, 2021, a settlement was finalized in the Proscia-Berger Action between Proscia-Berger, Branchburg Township, and Branchburg PD. ("Confidential Settlement Agreement and Release of all Claims," attached as Ex. D. to the Certification of Corey Floyd, ECF No. 31-4 at 34–42.) As part of that agreement, Proscia-Berger agreed to dismiss the individual defendants with prejudice—including Crisafulli and Floyd (*Id*. at 1)—and to file a stipulation of dismissal with prejudice as to them after receipt of the settlement agreement, but

---

[3] Plaintiffs cite *Hulmes v. Honda Motor Co.*, 924 F. Supp. 673, 681 (D.N.J. 1996) to assert that whether a dismissal is with or without prejudice is not dispositive. As Branchburg points out, *Hulmes* is inapplicable here because the court in that case was observing that in some instances a dismissal without prejudice could trigger a subsequent bar under the entire controversy doctrine, whereas the dismissal in the Proscia-Berger Action was with prejudice. (Branchburg Reply at 5.) Plaintiffs also rely on *Arena v. Borough of Jamesburg, Middlesex Cnty.*, 309 N.J. Super 106, 110–11 (App. Div. 1998) to assert that the entire controversy doctrine does not apply if the previous action did not result in an adjudication on the merits. On reply, Branchburg and Proscia-Berger correctly distinguish *Arena* on the basis that the court's refusal to apply the entire controversy doctrine in its subsequent case was premised on the fact that in the prior case the plaintiff entered a voluntary dismissal without prejudice before an answer was filed or any activity took place in the case, and without a settlement. (Branchburg's Reply at 4; Proscia-Berger's Reply at 5–6.) In the Proscia-Berger Action, as discussed further, *infra*, Crisafulli and Floyd filed answers and substantial discovery was completed.

6

before receipt of the settlement monies from Branchburg Township and Branchburg PD. (*Id*. at 6–7.) On March 18, 2021, the parties filed the stipulation of dismissal with prejudice as to Crisafulli and Floyd. (Lorell Decl., Ex. D, "Stipulation of Dismissal with Prejudice as to Lieutenant Peter Crisafulli, Sergeant Manuel Camunas, Sergeant Corey Floyd, and Sergeant Thomas Meola" at 1, ECF No. 18-6).

Given that the settlement that resolved the Proscia-Berger Action was between Proscia-Berger, Branchburg Township, and Branchburg PD, without any contribution from Crisafulli or Floyd, the Court finds that it is entirely reasonable that their approval was neither sought nor needed. Nonetheless, Plaintiffs provide no authority in support of the notion that their professed lack of knowledge or participation in the settlement of the Proscia-Berger Action is relevant to determining whether the judgment in that suit was final.

As to the finality of the actual order dismissing Crisafulli and Floyd from the Proscia-Berger Action, there is substantial authority for the general principle that under New Jersey law, a stipulation of dismissal with prejudice constitutes a decision on the merits. *See, e.g., Dowdell v. University of Medicine and Dentistry of New Jersey*, 94 F. Supp. 2d 527, 533 (D.N.J. 2000) ("Under New Jersey law, a dismissal with prejudice constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.") (citations and quotations omitted); *Maiden v. North Brunswick Twp. Sch. Dist.*, Civ. No. 19-18768, 2020 WL 3546809, at *4 (D.N.J. June 30, 2020) (finding a stipulation of dismissal with prejudice required by the settlement agreement and entered by the New Jersey Superior Court was a final judgment on the merits for purposes of the entire controversy doctrine.); *Kolodzij v. Borough of Hasbrouck Heights*, Civ. No. 18-481, 2019 WL 2710663, at *3 (D.N.J. June 28, 2019) (finding a prior voluntary dismissal with prejudice was valid, final, and on the merits for purposes of entire controversy doctrine). Consistent with this authority, the Court finds that the Proscia-Berger Action's dismissal

of Crisafulli and Floyd with prejudice constitutes a final judgment on the merits for the purposes of the entire controversy doctrine.

### 3. *Fair and Reasonable Opportunity to Previously Litigate*

Branchburg argues that Plaintiffs' claims were ripe during the prior suit and that they had a fair and reasonable opportunity to litigate them because they were represented by counsel during the SCPO investigation and they had their own counsel during the Proscia-Berger Action, which proceeded for two years and involved substantial discovery. (*Id*. at 10–13). According to Branchburg, Plaintiffs therefore had ample time to raise their claims but instead chose to strategically wait until Proscia-Berger's claims against them were dismissed with prejudice in her suit before filing their suit the very next day.[4] (*Id*. at 10.)

Plaintiffs contend their claims could not have been brought earlier because the SCPO was not a named party in the Proscia-Berger Action and because their claims were not ripe until Branchburg settled the suit. (Opp'n Br. at 20–21.)

The complaint in this matter is more a model of rhetoric than clarity, however, as to Branchburg, it alleges § 1983 injuries stemming from its handling of the underlying sexual harassment/assault investigation and the conditions of their employment. It pleads no connection to the settlement. Likewise, as to Proscia-Berger, it alleges intentional infliction of emotional distress based on "her deceitful conduct/slander/libel", with no connection to the settlement either. (Compl. ¶ 62.) As to the absence of SCPO from the prior suit, Plaintiffs provide no basis in law or fact for their argument that its absence somehow prevented them from bringing their claims against Branchburg or Proscia-Berger. Put another way, given that the New Jersey Supreme Court

---

[4] Branchburg asserts in its opening brief that the Complaint in this matter was filed the day after Plaintiffs were dismissed from the Proscia-Berger Action (Branchburg's Moving Br. at 10), but the record that it provided suggests, *a fortiori*, that although the Complaint was *served* on Branchburg the following day, it was actually filed the *same day* as the dismissal (s*ee* Certification of Elizabeth Lorell, Esq., ¶¶ 7–8, ECF No. 18-2).

has largely, although not completely, abandoned compulsory party joinder under the entire controversy doctrine, Plaintiffs' failure to join SCPO to the prior suit might have been an impediment to barring their claims against SCPO in this case under the doctrine (an issue the Court need not address because SCPO does not seek dismissal on that basis), but the Court perceives no reason why it should prevent Plaintiffs' claims from being barred against either Branchburg or Proscia-Berger. *See Federated Mutual Ins. Co. v. City of Ocean City*, Civ. No. 19-21405, 2022 WL 951287, at *5–6 (D.N.J. Mar. 30, 2022) (summarizing the shifts in the party joinder requirement for the entire controversy doctrine). Therefore, despite Plaintiffs' assertions to the contrary, the Court finds that their claims against Branchburg and Proscia-Berger were indeed ripe during the Proscia-Berger Action.

Plaintiffs also say they did not have a fair and reasonable opportunity to litigate their claims because their attorneys in the Proscia-Berger Action, appointed by Branchburg, informed them that their representation was strictly limited to defending them and not to pursue counterclaims on their behalf. (Opp'n Br. at 23.) They were not told they could hire their own attorney. (*Id*.) Crisafulli also denies accusations of "gamesmanship" with respect to the timing of the filing of their complaint in this matter. (Crisafulli Cert. ¶ 34.) Plaintiffs argue that it would be unfair to penalize them because the Proscia-Berger Action was settled before they had the opportunity to find and retain their own attorney to bring their affirmative claims. (*Id*. at 23–24). In fact, they accuse Branchburg of deliberately settling the prior case without their knowledge or approval in an attempt to prevent them from filing their own claims. (*Id*. at 24.)

Unsurprisingly, Branchburg denies that it deliberately settled the prior case as a tactical measure against Plaintiffs' claims. It says it had no knowledge of Plaintiffs' intent to pursue their own claims until weeks after the parties' settlement, when it received a litigation hold letter via email that was dated March 11, 2021. (Reply at 7 n.5; ECF No. 32-2). It notes that, in apparent

conflict with Plaintiffs' position that they were never told they could retain their own counsel, Plaintiffs' own certifications with their opposition attest that they began to seek counsel "in earnest" in early November 2020.  (*Id*. at 7).  Branchburg also attests that Plaintiffs' counsel claimed to its counsel that he had been monitoring the Proscia-Berger Action for quite some time and although he served the litigation hold letter, he never appeared in the prior case.  (*Id*.; Lorell Cert. ¶ 3.)

The entire controversy doctrine is an equitable principle, and the New Jersey Supreme Court has repeatedly reminded lower courts that judicial fairness should be the polestar of its application.  *See K-Land Corp. No. 28 v. Landis Sewerage Authority*, 800 A.2d 861, 861 (2002).  Courts must therefore balance the interests of judicial efficiency with fairness to the parties.  *Coleman v. Chase Home Finance, LLC*, 446 Fed. Appx. 469, 471 (3d Cir. 2011) (citation omitted).

Here, the Court has already found that Plaintiffs' claims were ripe and known to them at the time of the Proscia-Berger Action.  Moreover, Plaintiffs point to no effort of any kind to preserve their rights since November 2020 when they apparently began to search for counsel, presumably because they had concluded that they had rights that needed to be protected.  They sought no stay of the state court proceedings while they searched for counsel or attempted to contact that court in any way.  Moreover, once they did retain counsel, more than a week prior to being dismissed, he did not appear or seek a stay of the case, much less request leave to amend their answers. Rather, no action was taken to pursue Plaintiffs' claims until the very same day that Proscia-Berger's claims against them were dismissed with prejudice.  Had Plaintiffs raised their claims in state court, they could have been addressed within the context of that suit, and the discovery could have been conducted in a single effort.  If this Court permitted Plaintiffs' claims to proceed here, they would have the strategic benefit of first demanding the discovery from the Proscia-Berger Action, then augmenting it as they pleased, and then imposing that burden together

with the burdens of any dispositive motions and trial on Defendants and this Court. This is far from fair. Indeed, it appears to be a textbook example for the three principal reasons behind the entire controversy doctrine, to promote "(1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to the parties in an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay." *In re Mullarkey*, 536 F.3d at 229 (citations omitted). Accordingly, the Court concludes that Plaintiffs' claims against Branchburg and Proscia-Berger must be dismissed.[5] Insofar as the Court further concludes that amending the Complaint cannot overcome the entire controversy doctrine and would be futile, the dismissal of Branchburg and Proscia-Berger will be with prejudice. *See Mason v. US Bank*, Civ. No. 16-1366, 2016 WL 7189828, at *6 (D.N.J. Dec. 12, 2016) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).[6]

    C.    **SCPO is not a Person Under 42 U.S.C. § 1983**

Plaintiffs style their § 1983 claims against the SCPO as *Monell* claims under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978). (Opp'n Br. at 25) ("Defendants, SCPO and TOB are liable for their conduct based upon the long ago established Monell doctrine."). In its Motion to Dismiss, the SCPO argues that it is not a "person" amenable to suit under 42 U.S.C. § 1983.[7]

---

[5] The Court also notes that because Plaintiffs filed answers in the Proscia-Berger Action, the Court's dismissal of their claims here is consistent with the New Jersey Supreme Court's more recent guidance distinguishing the proper application of the entire controversy doctrine against defendants who answered the prior complaint from the improper application against defendants who filed a motion to dismiss. *See Bank Leumi USA v. Kloss*, 233 A.3d 536, 542–543 (2020).

[6] Given the Court's decision to dismiss the claims against Branchburg and Proscia-Berger based on the entire controversy doctrine, it does not reach their other arguments for dismissal.

[7] In its moving brief, the SCPO sought dismissal based on immunity under the 11th Amendment but withdrew its position without prejudice in its reply brief. The SCPO's other arguments for dismissal are not reached here because the Court finds that dismissal of the claim against it is appropriate for the reasons set forth in the opinion.

In *Will v. Michigan Department of State Police*, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, (1989). Local governmental bodies and their officials, by contrast, are regarded as "persons" amenable to suit under § 1983. *See Monell*, 436 U.S. at 690. The Court must determine whether the SCPO was acting as an arm of the State when it engaged in the misconduct alleged.

The analysis is guided by *Coleman v. Kaye*, 87 F.3d 1491 (3d Cir. 1996). In *Coleman*, the Third Circuit "held that 'when [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State.'" *Estate of Lagano*, 769 F.3d at 855 (citing *Coleman*, 87 F.3d at 1505) (emphasis added). When, however, prosecutors "perform administrative functions 'unrelated to the duties involved in criminal prosecutions,'" *id.* (quoting *Coleman*, 87 F.3d at 1505–06), they are not acting as arms of the state but as county officials who remain subject to § 1983 suits. "The category of the actions taken, and not their alleged wrongfulness, is determinative." *See Hof v. Janci*, Civ. No. 17-295, 2017 WL 3923296, at *5 (D.N.J. Sept. 7, 2017). Whereas personnel or staffing decisions fall within the administrative ambit of a prosecutor's office and therefore "flow from the County," *Evans v. City of Newark*, Civ. No. 14-120, 2016 WL 2742862, at *9 (D.N.J. May 10, 2016), actions taken related to enforcing the criminal law fall within the "law enforcement and prosecutorial functions" of the county prosecutor's office and therefore constitute conduct as an arm of the state. *Id.* at *10. To determine whether the conduct at issue falls into "the ambit of 'classic law enforcement and investigative functions[ ]'" *Estate of Lagano v. Bergen Cnty Pros. Off.*, 769 F.3d 850, 855 (3d Cir. 2014) (citing *Coleman*, 87 F.3d at 1505), a complaint "must be read as a whole, and its averments and the inferences reasonably drawn from those averments must be viewed in the light most favorable to the plaintiff." *Id.* (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013)).

Here, having reviewed the Complaint as a whole and viewing it in a light most favorable to Plaintiffs, the Court is persuaded that the offending conduct, *i.e.*, the SCPO's performance of the alleged investigation into Proscia-Berger's claims of sexual harassment and assault (Compl. ¶ 36), and its negotiation of Plaintiffs' pleas as to those claims (Compl. ¶ 41), are related to their classic law enforcement and/or investigative functions and are unlike the type of internal personnel and staffing decisions[8] that are characterized as local matters. The claim that the SCPO failed to adhere to the New Jersey Attorney General Guidelines, Internal Affairs Policies and Procedures (Compl. ¶ 4.) as part of its purported sham investigation does not render the conduct unrelated to law enforcement and investigative functions or otherwise transform it into a local or administrative matter. *See Murphy v. Middlesex County*, Civ. No. 15-7102, 2017 WL 6342154, at *7 (D.N.J. Dec. 12, 2017) (concluding that failure to follow state law enforcement directive did not render the alleged conduct administrative). For these reasons, the Court finds that the SCPO was acting as an arm of the State and was therefore not a "person" under 42 U.S.C. § 1983 with respect to the offending conduct at issue. Accordingly, the SCPO's motion to dismiss will be granted and the claims against the SCPO will be dismissed with prejudice. *See Sanders v. Camden Cnty Corr. Fac.*, Civ. No. 16-7912, 2017 WL 1348506, at *2 (D.N.J. Apr. 7, 2017) (citation omitted).

---

[8] The Court notes that the "personnel and staffing decisions" deemed by the Third Circuit to be administrative in *Coleman* were internal to the prosecutor's office insofar as the plaintiff in that case was an employee of the prosecutor's office itself who was complaining of sexual discrimination. Here, the Complaint does not allege the Plaintiffs were employed by the SCPO. The SCPO was acting in its capacity as an investigator rather than as an employer.

IV. **CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motions to dismiss. An appropriate Order will follow.

Date: **April 29, 2022**

                                                   s/ Zahid N. Quraishi
                                                   **ZAHID N. QURAISHI**
                                                   **UNITED STATES DISTRICT JUDGE**